UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ARTHUR SAWYER; JARRETT DRAKE; ERIC MESCHINO, on behalf of themselves and those similarly situated<br><br>　　　　　　Plaintiffs,<br><br>VERSUS<br><br>MONTEREY BAY AQUARIUM and MARINE STEWARDSHIP COUNCIL,<br><br>　　　　　　Defendants. | CIVIL ACTION NO. 2:23-CV-00796<br><br>JUDGE GREG GERARD GUIDRY<br><br>MAG. KAREN WELLS ROBY |

**MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER
DUE TO IMPROPER VENUE OR, IN THE ALTERNATIVE,
<u>LACK OF PERSONAL JURISDICTION</u>**

**MAY IT PLEASE THE COURT:**

This memorandum is respectfully submitted by Defendant Monterey Bay Aquarium Foundation in support of its Motion to Transfer Due to Improper Venue or, in the Alternative, Lack of Personal Jurisdiction.

　　**I.　　Statement of the Case**

Plaintiffs are four Massachusetts lobstermen, including the President and Vice-President of the Massachusetts Lobsterman's Association, respectively. R. Doc. 1 at ¶¶ 1, 8-11. Defendant Monterey Bay Aquarium Foundation ("MBA") is a 501(c)(3) nonprofit corporation incorporated under the laws of the State of California and headquartered in Monterey, California. R. Doc. 1 at ¶12. As plaintiffs state in their complaint, "MBA operates an internet publication named 'Seafood

Watch, through which MBA promulgates its opinions on the sustainability of various seafoods.'" *Id*.[1]

Plaintiffs seek to represent a putative class of "all Massachusetts-based lobstermen who experienced a drop in income reasonably attributable to the actions of Monterey Bay Aquarium and Seafood Watch." *Id*. at ¶ 55. Plaintiffs' claims arise from statements posted on MBA's website concerning the risks posed to North American right whales by lobster fishing. Specifically, on September 5, 2022, MBA posted a press release on its website highlighting "significant risks of entanglement in pot, trap, and gillnet fisheries to the endangered North Atlantic right whale" and assigning "a red rating to those fisheries using pots, traps, and gillnets." R. Doc. 1 at ¶ 34.[2]

Plaintiffs allege that the statements in the press release caused meal kit delivery services Hello Fresh and Blue Apron to cease distribution of American lobster, and caused Whole Foods to stop selling American lobster. *Id*. at ¶ 40. Plaintiffs further allege that the price of American lobster dropped by 30%. *Id*. at ¶ 44.

On March 2, 2023, Plaintiffs filed suit against MBA asserting two causes of action. R. Doc. 1. First, Plaintiffs allege that MBA violated Louisiana Revised Statutes § 3:4503, which provides that "[a]ny producer of perishable agricultural or aquacultural food products who suffers damage as a result of another person's disparagement of any such perishable agricultural or aquacultural food product has a cause of action for damages, and for any other appropriate relief in a court of

---

[1] Plaintiffs improperly name Monterey Bay Aquarium as a defendant. There is no such legal entity The correct name of the entity that operates Seafood Watch is Monterey Bay Aquarium Foundation.

[2] *See also id*. at n 19 (citing the press release at https://www.montereybayaquarium.org/newsroom/press-releases/seafood-watch-assigns-red-ratings-to-canadian-and-us-fisheries-that-pose-risk-to-the-endangered-north-atlantic-right-whale).

competent jurisdiction." *Id*. at ¶¶ 63-73.[3] Second, Plaintiffs allege a claim for "intentional interference with a proprietary right." *Id*. at ¶¶ 82-87.[4]

In addition to MBA, Plaintiffs also named as a defendant the Marine Stewardship Council ("MSC"), an international nonprofit corporation with its headquarters in London, England. *Id*. at ¶ 13. Plaintiffs' claims against MSC relate to MSC's alleged decision, on November 16, 2022, to suspend its sustainability certificate for the Gulf of Maine lobster fishery. *Id.* at ¶¶ 38-39.

Plaintiffs assert that this Court has personal jurisdiction over MBA because the Seafood Watch website is accessible in Louisiana, and further because the statements by Seafood Watch "caus[ed] Whole Foods, Hello Fresh and Blue Apron not to sell American lobster in the state of Louisiana." *Id*. at ¶ 15.

Plaintiffs allege that venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) "because the harm caused by Defendants' false and defamatory statements occurred in Louisiana and forms a substantial party of Plaintiffs' defamation and disparagement claim." *Id*. at ¶ 16.

## II. Summary of Argument

Under clear precedent in the Fifth Circuit, this Court lacks personal jurisdiction over MBA. By Plaintiffs' own admission, MBA is a California nonprofit corporation and the statements about which Plaintiffs complain were posted on MBA's California-based website. R. Doc. 1 at ¶ 12. Plaintiffs argue that the website is accessible in Louisiana but the Fifth Circuit has expressly held that "[m]aking a website that's visible in [a particular state] of course, does not suffice [to establish

---

[3] Under the statute, "disparagement" means "dissemination to the public in any manner of any false information that the disseminator knows or should have known to be false, and which states or implies that a perishable agricultural or aquacultural food product is not safe for consumption by the consuming public." La. Rev. Stat. Ann. § 3:4502. While not at issue in the instant motion, the statements about which the plaintiffs complain do not concern whether American lobsters are safe for consumption.
[4] Plaintiffs claim they "have a proprietary right in the fish and game in the waters they fish," and that MBA's statements have caused a decline in the price of American lobster. R. Doc. 1 at ¶¶ 84-86.

3

personal jurisdiction].ND" *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 320 (5th Cir. 2021), cert. denied, 214 L. Ed. 2d 277, 143 S. Ct. 485 (2022). "We first look to the website's interactivity. If the site is passive—it just posts information that people can see—jurisdiction is unavailable, full stop." *Id.* at 318 (citing *Revell v. Lidoy*, 317 F.3d 467, 470 (5th Cir. 2002)). Here, MBA's Seafood Watch website is passive (*i.e.*, it posts information but does not allow for interactive dialogue with individuals who access the site). *See* Ex. "A" (Aff. of Rob Mann).

Even if this Court were to move beyond the passive-website analysis, "[w]hat matters is whether [the defendant] aimed the alleged libel at [the forum state]." *Johnson*, 21 F.4th at 321 (citing *Calder v. Jones*, 465 U.S. 783, 789 (1984)). Here, Plaintiffs concede that the statements were "directed at consumers and businesses in all fifty states." R. Doc. 1 at ¶ 23. MBA's statements were "not aimed at [Louisianians] any more than at residents of other states," and as a result, there is no personal jurisdiction. *Johnson*, 21 F.4th at 318 (citing *Revell*, 317 F.3d at 475).

Plaintiffs argue that the statements caused effects in Louisiana because Whole Foods has seven locations in Louisiana and because Hello Fresh and Blue Apron have customers in Louisiana, but this allegation is likewise insufficient to establish personal jurisdiction. Under the "effects" test established in *Calder*, a court may only assert jurisdiction over non–resident defendants whose intentional conduct was calculated to cause injury in the forum State. As the Fifth Circuit observed in *Johnson*, "[t]he key question, under *Calder*, is whether the forum state was 'the focal point both of the [alleged libel] and of the harm suffered.'" 21 F.4th at 318. Although Plaintiffs allege that they suffered harm in Louisiana, they do not allege that Louisiana was "the focal point" of the harm. Nor could they. The harm alleged by Plaintiffs is that Whole Foods, Hello Fresh and Blue Apron purportedly ceased distribution of American lobster, but Whole Foods is headquartered in Austin, Texas, and its seven Louisiana locations form only a small part of its

4

hundreds of locations in the United States.[5] Hello Fresh and Blue Apron, both headquartered in New York, likewise serve customers nationwide.[6] In sum, this Court has no jurisdiction over MBA.

Venue is also improper in this Court. Plaintiffs assert that "[v]enue is proper under 28 U.S.C. § 1391(b)(2) because the harm caused by Defendants' false and defamatory statements occurred in Louisiana and forms a substantial party [sic] of Plaintiffs' defamation and disparagement claim." R. Doc. 1 at ¶ 16. But 28 U.S.C.A. § 1391(b)(2) states: "A civil action may be brought in a judicial district [] *in which a substantial part of the events or omissions giving rise to the claim occurred*, or a substantial part of property that is the subject of the action is situated." (emphasis added). Here, ***none*** of the events or omissions giving rise to the claim occurred in this district. The Seafood Watch publication at issue in this case was authored in California, and uploaded to the Seafood Watch website in California. *See* Ex. "A" (Aff. of Rob Mann); Ex. "B" (Aff. of Jenn Dianto Kemmerly)

Ordinarily, when personal jurisdiction and venue defenses are invoked simultaneously, courts consider personal jurisdiction before venue. *Lindahl v. Off. of Personnel Mgt.,* 470 U.S. 768, 793 n. 30 (1985). Nevertheless, courts may consider venue first "[w]hen there is a sound prudential justification for doing so." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979). "Justification typically exists if venue is clearly improper and, therefore, resolving personal jurisdiction would not alter a court's decision to dismiss or transfer the proceeding for improper venue." *LaCombe v. Walt Disney Parks & Resorts U.S., Inc.*, No. CV 18-7689, 2019 WL

---

[5] Although Whole Foods is no longer publicly traded, its last Form 10-K filed with the Securities & Exchange Commission states that "As of September 24, 2017, [Whole Foods] operated 470 stores: 448 stores in 42 U.S. states and the District of Columbia." See https://www.sec.gov/Archives/edgar/data/865436/000086543617000238/wfm10k2017.htm \.
[6] *See* https://www.annualreports.com/HostedData/AnnualReports/PDF/hellofresh-se_2022.pdf and https://www.sec.gov/ix?doc=/Archives/edgar/data/1701114/000170111423000020/aprn-20221231.htm

13248968, at *1 (E.D. La. May 1, 2019) (citing *Ricks v. Cadorath Aerospace Lafayette, LLC*, No. CV 15-6686, 2017 WL 590293, at *6 (E.D. La. Feb. 14, 2017)).

In the instant case, venue is clearly improper, and MBA therefore requests that this Court transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1406. Alternatively, MBA submits that this Court lacks personal jurisdiction over it, and that the case may therefore also be transferred to the Northern District of California pursuant to 28 U.S.C. § 1631. In the event the Court determines that transfer is inappropriate, MBA requests that the action be dismissed.

### III. Argument

#### (A) *Louisiana lacks personal jurisdiction over MBA*.

A plaintiff bears the burden of proving that a court can properly exercise personal jurisdiction over the defendant. *Wilson v. Belin*, 20 F.3d 644, 649 (5th Cir. 1994). To satisfy that burden, the plaintiff must show that the defendant has the requisite "minimum contacts" with the forum state necessary to exercise personal jurisdiction without "offend[ing] traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

In deciding whether a plaintiff has met its burden, courts will typically determine whether either general jurisdiction or specific jurisdiction exists. *Wilson*, 20 F.3d at 649. Here, Plaintiffs allege that they have specific jurisdiction. R. Doc. 1 at ¶ 15(b).

Specific jurisdiction requires that "the defendant must have 'purposefully directed' his activities at the residents of the forum, and the litigation must result from alleged injuries that 'arise out of or relate to' the defendant's activities directed at the forum." *Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir. 1992) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Further, in a defamation case,[7] courts will not find specific jurisdiction where the challenged statements

---

[7] Plaintiffs do not directly assert a claim for defamation, but their allegations make plain that their claims are, in essence, claims for defamation. *E.g.*, R. Doc. 1 at ¶ 16 (alleging that "the harm caused by Defendants'

"lack any connection with the forum state." *Clemens v. McNamee*, 615 F.3d 374, 376 (5th Cir. 2010). Here, the challenged statements were made by a California nonprofit corporation on its California-based website. The statements do not concern activities or people in Louisiana; rather, they concern the risks posed to North Atlantic right whales by lobster fisheries along the U.S. East Coast, including in particular Massachusetts. Simply put, the statements "lack any connection with the forum state."

Plaintiffs argue that accessibility of the Seafood Watch website establishes personal jurisdiction in Louisiana. This argument fails. The Fifth Circuit has expressly held that "[m]aking a website that's visible in [the forum state] of course, does not suffice [to establish personal jurisdiction]." *Johnson*, 21 F.4th at 320; *see also Herman v. Cataphora*, 730 F.3d 460, 465 (5th Cir. 2013) (holding that merely making an article accessible online in the forum is insufficient to give rise to specific jurisdiction based on that article). The passive availability of information on a website, without any interactivity with users of that website in the forum state, is the end of the jurisdictional analysis. *Johnson*, 21 F.4th at 318 ("We first look to the website's interactivity. If the site is passive—it just posts information that people can see—jurisdiction is unavailable, full stop."). Here, Plaintiffs' allegations are merely that "The Seafood Watch … is accessible and read in Louisiana," R. Doc. 1 at ¶ 23, a textbook allegation of passive non-interactivity, and therefore this Court's personal jurisdiction analysis should be at an end. While Plaintiffs conclusorily allege that "Seafood Watch is more than just a passive, information-conveying website," *id.* at ¶ 24, Plaintiffs do not allege any actual interactive features of the website beyond the fact that other entities may use the information provided as "instructional tools." Further, as confirmed by Rob Mann, Vice President of Technology for MBA, the Seafood Watch website is passive (*i.e.*, it posts

---

false and defamatory statements occurred in Louisiana and forms a substantial party [sic] of Plaintiffs' defamation claims.").

information but does not allow for interactive dialogue with individuals who access the site). *See* Ex. "A" (Aff. of Rob Mann).

Even if those conclusory allegations of the website being something more than passive were sufficient to shift this Court's analysis to the next step, Plaintiffs concede that the statements were "directed at consumers and businesses in all fifty states." R. Doc. 1 at ¶ 23. Because MBA's statements were "not aimed at [Louisianians] any more than at residents of other states," there is no personal jurisdiction. *Johnson*, 21 F.4th at 318 (citing *Revell,* 317 F.3d at 475).

In addition to claiming that the Seafood Watch website is accessible in Louisiana, Plaintiffs allege they have sustained harm in Louisiana because Whole Foods, Hello Fresh and Blue Apron ceased distributing American lobsters in Louisiana (along with every other state). But an allegation that the plaintiff suffered harm in the forum state does not suffice. *Clemens,* 615 F.3d at 376. Rather, what matters if whether the forum state was "'the focal point both of the [alleged libel] and of the harm suffered.'" *Johnson*, 21 F.4th at 318 (quoting *Calder*, 465 U.S. at 789). As the Fifth Circuit observed in *Herman*, "[e]ven if the majority of the claimed harm is felt in the forum state, this court has declined to find personal jurisdiction when the statements focus on activities and events outside the forum state." 730 F.3d at 465.

In *Johnson*, a Texas resident alleged that the Huffington Post libeled him by calling him a white nationalist and a Holocaust denier. 21 F.4th at 316. He sued the Huffington Post in Texas. The Huffington Post is not a citizen of Texas, but its website markets ads, merchandise, and ad-free experiences to all comers, including individuals who access the site from Texas. *Id.*. Notwithstanding the plaintiff's claim that he sustained damages in the state of Texas, the Fifth Circuit held that there was no personal jurisdiction:

> [T]he only reason to hale HuffPost into Texas is that Texans visited the site, clicking ads and buying things there. But as far as Johnson has alleged, those

8

>visits reflect only HuffPost's universal accessibility, not its purposeful availment of Texas. Accessibility alone cannot sustain our jurisdiction. If it could, lack of personal jurisdiction would be no defense at all.

21 F.4th at 320.

The holding in *Revell* is likewise instructive. 317 F.3d at 467. In *Revell*, the Fifth Circuit held that Texas could not assert jurisdiction over a Columbia University web publication that accused a Texas citizen of complicity in a terrorist attack. The Court observed that the article never mentioned Texas, never discussed the plaintiff's activities in Texas, and that the article was not aimed at Texans any more than at residents of other states. *Id*. at 473. The Court held that in order for Texas to have jurisdiction, the article had to target Texas specifically and knowingly. *Id*. Because it did not, the Court found that there was no personal jurisdiction in Texas. *Id*. at 476.

In light of the foregoing, MBA is not subject to personal jurisdiction in Louisiana.

### *(B) Venue is improper in the Eastern District of Louisiana.*

28 U.S.C. § 1391(b) provides, in pertinent part:

A civil action may be brought in—

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. §1391(b). Plaintiffs claim that venue is proper under §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Louisiana. *See* R. Doc. 1 at ¶ 16. This contention is incorrect; no events or omissions giving rise to the claim occurred in Louisiana.

"[S]ubstantiality for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Miller Masonry, Inc. v. EMB Quality Masonry, LLC*, CIV.A. 13-6737, 2014 WL 5340747, at *2 (E.D. La. Oct. 20, 2014) (alterations omitted) (quotations omitted). The "focus of the 'substantial part of events' inquiry is on the actions or omissions of the defendant." *Id*.

Here, Plaintiffs "are a group of lifelong Massachusetts lobsterman" and Defendant MBA is "an aquarium located in California." *See* R. Doc. 1 at ¶¶ 1, 5. As noted, Plaintiffs complain that MBA's September 5, 2022, report caused them injury. MBA created, edited and published its report from its headquarters in Monterey, California. See Ex. "B" (Aff. of Jenn Dianto Kemmerly). Thus, the "substantial part of the events" giving rise to Plaintiffs' claims is the publication of the report in Monterey, California.

This Court's holding in *Little Drummer Boy Productions, Inc. v. Our Loving Mother's Children, Inc.*, 2001 WL 766963 (E.D. La. July 6, 2001), is instructive. In that case, "defendants mailed Journals, requests for donations, books, videotapes and other religious articles to Louisiana residents," "sold books and videos through outlets in Louisiana," and "targeted south Louisiana in advertising and television broadcasts on HTV." *Id* at *6. The acts the plaintiffs complained of, however, related to the allegedly false descriptions of the defendants' products. *See id*. This Court specifically noted that the defendant's headquarters was in Conyers, Georgia, and stated, "It is the opinion of this Court that the alleged false description/designation … occurred in Conyers, Georgia. The Complaint is devoid of any actions taken by defendants in the State of Louisiana regarding these alleged misrepresentations." *Id*. at *7. This Court further stated, "The fact that sales were made to Louisiana residents, donations were received from Louisiana residents, or that

[defendant] advertised on HTV, are not the events or omissions giving rise to the claims associated with this suit"; rather, it was the defendants' misrepresentations that "occurred in Georgia" that were the substantial events for venue purposes. *Id.* at *8 (finding that, "[a]s a substantial part of the events or omissions giving rise to the claims occurred in Georgia rather than Louisiana, Louisiana is not a proper venue under § 1391(b)(2)").

Similar to the defendants in *Little Drummer Boy*, MBA created, edited and published its report at its headquarters in Monterey, California. It is MBA's publication of the report at its headquarters in Monterey, California, that qualifies as the alleged substantial event giving rise to Plaintiffs' claims. *See id.*

It is irrelevant, for purposes of venue, that the report was available to access in Louisiana or that vendors in Louisiana (and elsewhere) stopped carrying American lobster allegedly as a result of MBA's report. This Court, in fact, has recognized that, for venue purposes, an event giving rise to a claim does not include alleged actions after the fact and as a result of said event. *See Jenkins v. Georgia-Pac. Co.*, CIV A. 02-0165, 2002 WL 638561, at *1 (E.D. La. Apr. 17, 2002) (finding that the event giving rise to the plaintiff's claim was the car accident in Mississippi, not the treatment received in Louisiana after the fact and as a result of the accident). Such an argument, this Court has stated, "flies in the face of the pertinent, plain language of § 1391(a)(2) that venue is proper in 'a judicial district in which *a substantial part of the events or omissions giving rise to the claim* occurred.'" *Id.* (emphasis in original).

Moreover, "[a]cts or omissions must be more than tangentially connected to qualify as 'substantial' under the statute outlining the general provisions regarding venue; indeed, substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute, and thus, the test for determining

venue is not the defendant's 'contact' with a particular district, but rather the location of those events or omissions giving rise to the claim, theoretically a more easily demonstrable circumstance than where a claim arose." *Broker's Home, L.L.C. v. Trans Union, L.L.C.*, 07-846-JJB, 2008 WL 11350295, at *2 (M.D. La. Apr. 15, 2008).

In light of the foregoing, it is clear that venue is not proper in this Court.

### *(C) This action should be transferred to the Northern District of California.*

As noted above, when personal jurisdiction and venue defenses are invoked simultaneously, courts generally consider personal jurisdiction before venue because the former concerns the power of the court as derived from the constitution and the latter is a matter of convenience to the litigants, governed by statute. *Lindahl,* 470 U.S. at 793 n.30. Nevertheless, courts may consider venue first "[w]hen there is a sound prudential justification for doing so." *Leroy*, 443 U.S. at 180. "Justification typically exists if venue is clearly improper and, therefore, resolving personal jurisdiction would not alter a court's decision to dismiss or transfer the proceeding for improper venue." *LaCombe,* 2019 WL 13248968, at *1; *see also Jolie Design & Decor, Inc. v. BB Frosch, LLC*, No. CV 17-5052, 2018 WL 537798, at *1 (E.D. La. Jan. 24, 2018).

For the reasons discussed in section (B), *supra*, venue is clearly not proper in this Court. MBA therefore requests that this Court transfer this case to a venue that is proper—the United States District Court for the Northern District of California, where MBA is headquartered and where the events giving rise to plaintiffs' claims occurred.

28 U.S.C. § 1406(a) provides, "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Under § 1406, a case may be transferred to a district in which it could have been brought, rather than dismissed, if the

transferor court is the wrong venue and the interests of justice so require, even if the transferor court lacks jurisdiction. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962). Indeed, as this Court has previously acknowledged, when an action is filed in an improper venue, "[t]ransferring the case is ***the preferred remedy*** because it avoids any statute of limitation problems and the necessity of filing and serving a new action." *Orgeron v. Moran Towing Corp.*, CIV. A. 4164, 1994 WL 518313, at *1 (E.D. La. Sept. 21, 1994) (emphasis added); *see also In re Actos (Pioglitazone) Products Liab. Litig.*, 6:11-MD-2299, 2017 WL 5895483, at *8 (W.D. La. Nov. 28, 2017) (transferring a case where venue was improper and recognizing that transferring a case is the preferred remedy); *Ricks v. Cadorath Aerospace Lafayette, LLC*, CV 15-6686, 2017 WL 590293, at *10 (E.D. La. Feb. 14, 2017) (transferring a case where venue was improper and recognizing that transferring a case is the preferred remedy).

The events giving rise to this action occurred in the Northern District of California. Further, venue in the Northern District of California is proper under 28 U.S.C. § 1391(b)(1) and (c)(3) because MBA is a resident of that district and because the other defendant, MSC, is not a resident of the United States. *See* 28 U.S.C.A. § 1391(b)(1) ("A civil action may be brought in [] a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"); 28 U.S.C.A. § 1391(c)(3) ("a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants."). Accordingly, this Court should transfer this matter to the Northern District of California, where the alleged substantial event complained of occurred.

Alternatively, in the event this Court elects to consider personal jurisdiction first, transfer to the Northern District of California is also warranted. 28 U.S.C. § 1631 provides:

> Whenever a civil action is filed in a court … and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

The Fifth Circuit Court of Appeal has held that "the use of the term 'jurisdiction' in § 1631 encompasses both subject-matter and personal jurisdiction," and that "[t]he statute therefore permits a transfer when a district court lacks either type of jurisdiction and the other statutory prerequisites are met." *Franco v. Mabe Trucking Co., Inc.,* 3 F.4th 788, 795 (5th Cir. 2021).

Accordingly, whether the Court determines that there is no venue and/or that there is no personal jurisdiction over MBA, the appropriate remedy is transfer of the action to the Northern District of California. Alternatively, in the event this Court determines that transfer is not appropriate, MBA must be dismissed. *See* 28 U.S.C. § 1406 ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); *Giles v. Bayview Loan Servicing, L.L.C.*, No. CV 20-2238, 2020 WL 6483119, at *3 (E.D. La. Nov. 4, 2020) (stating the general rule that "when a court lacks personal jurisdiction over a defendant, it must dismiss the defendant without prejudice.").

### IV. Conclusion

For the foregoing reasons, MBA submits that this Court lacks both jurisdiction and venue, and that this case should be transferred to the United States District Court for the Northern District of California, or alternatively that MBA should be dismissed.

Respectfully submitted:

*/s/ Loretta G. Mince*
Loretta G. Mince (La Bar No. 25796)
Michael R. Dodson (La. Bar No. 37450)
Ashton Licciardi (La. Bar No. 38816)
FISHMAN HAYGOOD L.L.P.
201 St. Charles Ave. # 4600,
New Orleans, Louisiana 70170
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
lmince@fishmanhaygood.com
mdodson@fishmanhaygood.com
alicciardi@fishmanhaygood.com
*Attorneys for Monterey Bay Aquarium Foundation*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21 day of April, 2023, I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel who are CM/ECF participants.

*/s/ Loretta G. Mince*
LORETTA G. MINCE

3780229v.1