IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ARTHUR SAWYER; JARRETT DRAKE; ERIC MESCHINO; and BILL SOUZA, on behalf of themselves and those similarly situated, | Case No. 2:23-cv-00796 |
| Plaintiffs, | Hon. Greg Gerard Guidry |
| v. | |
| MONTEREY BAY AQUARIUM and MARINE STEWARDSHIP COUNCIL, | Mag. Karen W. Roby |
| Defendants. | |

### PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MOTION TO TRANSFER AND ALTERNATIVE MOTION TO DISMISS

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs, Arthur Sawyer, Jarret Drake, Eric Meschino, and Bill Souza, on behalf of themselves and those similarly situated ("Plaintiffs"), who submit the following Supplemental Memorandum in Opposition to Defendant, Monterey Bay Aquarium Foundation's ("MBA" or "Defendant") Motion to Transfer and Alternative Motion to Dismiss.

On May 25, 2023, MBA filed its Supplemental Memorandum in Support of Motion to Transfer due to Improper Venue or in the alternative Lack of Personal Jurisdiction. [Dkt. #15.] In that Memorandum, MBA downplays its connections with its corporate partners in an attempt to obscure the high degree of control it maintains over sales decisions of its corporate partners, such as Whole Foods. Plaintiffs take this opportunity to offer the Court additional evidence of the pervasiveness of MBA's control over their corporate partners and MBA's apparent publication (or at the very least, sanctioning of same) of its disparagement of an aquacultural product through use of "the [MBA's] Seafood Watch trademark and its copyrighted material" in Louisiana.

1

## ARGUMENT

When considering a motion to transfer, a reviewing court need only determine that the nonmovant has made a prima facie showing that jurisdiction is proper. *See, e.g.*, *Quick Techs., Inc. v. Sage Group, PLC*, 313 F.3d 338, 343 (5th Cir. 2002); *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2nd Cir. 2005) ("[I]f the court chooses to rely on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of venue.") When evaluating evidence in support of a prima facie case, the court "must accept the uncontroverted allegations in the plaintiff's complaint as true, and all factual conflicts contained in the parties' affidavits must be resolved in favor of the plaintiff." *Bally Gaming, Inc. v. Caldwell*, 12 F.Supp.3d 907, 911 (S.D. Miss. 2014) (citing *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)). Accordingly, as there is a factual conflict between Plaintiffs' and MBA's description of the agency relationships that MBA enjoys, that conflict should, at this point in the litigation, be resolved in favor of Plaintiffs.

Nevertheless, while Plaintiffs maintain they have already met their burden in establishing a prima facie case that jurisdiction in this Court is proper, nothing prohibits Plaintiffs from offering the Court *more* information than is strictly necessary to resolve the present dispute. To that end, Plaintiffs offer the attached Exhibits 1 through 4 as: 1) substantive evidence of the relationship between MBA and at least one of its corporate partners, Whole Foods; and, 2) substantive evidence that MBA publishes and/or sanctions the publication of the "Seafood Watch trademark and copyrighted material," which MBA describes as its "exclusive property" and which the Plaintiffs claim disparages aquaculture, in at least one physical Whole Foods store in Louisiana. While shopping at Whole Foods on May 28, 2023, the undersigned came upon these signs which are

2

presently published and maintained at the Whole Foods Market located at 300 N. Broad St, New Orleans, 70119.[1]

The signs indicate, in no uncertain terms, that if a product is marked red as "rated by Monterey Bay Aquarium Seafood Watch," then, in Whole Foods' own words, "[w]e don't sell it! Overfished, poorly managed[,] or harmful catch method[.]" (Ex. 3.) Whole Foods proudly displays their devotion to MBA's ratings, and makes it clear to even the average consumer that if MBA says a product is harmful, Whole Foods is committed to dropping that product. This dedication easily clears any presumption of institutional independence, *see Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999); as it demonstrates that, at least when it comes to purchasing decisions for seafood products, MBA has the ability to completely blacklist a supplier or even an entire product line.

MBA protests that it has no means of enforcing Whole Foods' commitment, and that it cannot control the process by which Whole Foods complies with such a commitment but these objections carry no weight. Whether or not MBA actually has the power to hold a corporate partner to its commitment is irrelevant to the question of whether such a commitment actually exists. Moreover, the "process" by which Whole Foods complies with its commitment is simply a question of whether or not it purchases a product. There may be a lengthy process engaged in by Whole Foods when it attempts to decide which products it should purchase, but the negative is not true: the decision to *not* purchase something requires no complex calculus. Instead, the process is simple: when MBA says a product is red-listed, Whole Foods will not purchase it. That commitment, as evidenced by the statements of Whole Foods itself, and readily visible to customers, is what binds MBA to this jurisdiction.

---

[1] Undersigned counsel Kristin Robbins submits that Exhibits 1 through 3 represent true and correct copies of photos personally taken by her at 1:15 p.m. on May 28, 2023 at the Broad Street Whole Foods in New Orleans.

Further, publicly available information on "seafoodwatch.org," a website purportedly maintained and operated by MBA, along with Exhibits 1 through 3, also makes clear that MBA is directly publishing its disparaging material in Louisiana. Exhibit 4 attached hereto represents a printout of "www.seafoodwatch.org" accessed on June 8, 2023 at 7:48 AM CST. Exhibit 4 makes clear that the signs at Whole Foods in Exhibits 1 through 3 are the property of MBA and statements of MBA in Louisiana which may only be used by Whole Foods in Louisiana with MBA's express consent and approval, stating:

> "Seafood Watch ® program…is owned and operated by the [MBA]. The [MBA] holds a registered trademark on the name Seafood Watch."

> "All research, findings, conclusions, ratings, recommendations, opinions, and analyses produced by the Seafood Watch program – including those appearing within the documents – are protected by federal copyright law. All such information is and remains the exclusive property of the [MBA]."

> "The [MBA] disseminates research, ratings, recommendations, and other information produced by Seafood Watch to a variety of industry partners. The [MBA] thereby grants to recipients a limited, nontransferable license to possess and use both the [MBA's] trademark and its copyrighted material only for internal ***uses preapproved in writing by the [MBA]***" (emphasis added)

Exh. 4.

The attached Exhibits also demonstrate MBA is directly disseminating and/or sanctioning the publishing of its disparaging comments in at least one physical location in Louisiana. This evidence calls into question MBA's assertion that "[t]he Seafood Watch report" is only "published in California" and/or available on the internet [Dkt. # 7-3 at ¶2; Dkt # 7-2 at ¶3]. Indeed, Exhibits 1-3 demonstrate that MBA's speech at issue here, which MBA describes as its "exclusive property," is published by MBA directly in Louisiana and/or only with its "preapprov[al]" in Louisiana. As such, by publishing and/or allowing the publication of its disparaging comments which MBA describes as its "exclusive property" in a Louisiana store, MBA has purposefully

availed itself of the privilege of conducting activities in Louisiana. As Plaintiffs' claims directly arose out of that conduct, personal jurisdiction over MBA is present in this Court.

## **CONCLUSION**

The attached Exhibits demonstrate that the commitment by Whole Foods to not purchase seafood that has been red-listed by MBA, is a prominent characteristic of the Whole Foods product line. MBA certainly does not control every aspect of Whole Foods' business; indeed, many of the products sold by Whole Foods are of no interest to MBA whatsoever. But when it comes to seafood, MBA has the ultimate veto power. Because MBA has the ultimate ability to block Whole Foods from carrying certain products, Whole Foods is an agent of MBA, and thus Whole Foods' contacts should be imputed to MBA.

The attached Exhibits also demonstrate that MBA is directly disseminating and/or sanctioning the use of its disparaging comments or "exclusive property" in Louisiana sufficient for MBA to be haled into a Louisiana court. At the very least, if the Court is considering granting MBA's instant Motion, the presence of MBA's logo, speech, and "exclusive property" published in a Louisiana store, and not just on the internet or in California as MBA contends, provides more support for this Court to permit the Plaintiffs to pursue jurisdictional discovery in this matter.

|  |  |
|---|---|
|  | **ECKLAND & BLANDO, LLP** |
| Dated: June 8, 2023 | /s/ K<span style="font-variant:small-caps">ristin</span> K. R<span style="font-variant:small-caps">obbins</span><br>Kristin K. Robbins, Esq. (La. Bar No. 31303)<br>Energy Centre Building<br>1100 Poydras Street Suite 2900<br>New Orleans, LA 70163<br>Tel: (504) 662-1594<br>Facsimile: (612) 236-0719<br>krobbins@ecklandblando.com<br><br>/s/S<span style="font-variant:small-caps">amuel</span> P. B<span style="font-variant:small-caps">latchley</span><br>Samuel P. Blatchley* (BBO No. 670232)<br>(*Pro Hac Vice*)<br>22 Boston Wharf Road<br>7th Floor<br>Boston, MA 02210<br>(612)-236-0160<br>sblatchley@ecklandblando.com<br><br>*Attorneys for Plaintiffs and Presumptive Class* |