UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ARTHUR SAWYER; JARRETT DRAKE; ERIC MESCHINO, on behalf of themselves and those similarly situated, | CIVIL ACTION |
| VERSUS | NO: 23-796 |
| MONTEREY BAY AQUARIUM and MARINE STEWARDSHIP COUNCIL. | SECTION: T (4) |

**ORDER AND REASONS**

Before the Court is Defendant Monterey Bay Aquarium's ("MBA") Motion to Transfer Due to Improper Venue, or, in the Alternative, Lack of Personal Jurisdiction pursuant to 28 U.S.C. § 1406 and/or 28 U.S.C. § 1631 (the "Motion").[1] The Motion seeks transfer of this case to the United States District Court for the Northern District of California.[2] Plaintiffs Arthur Sawyer, Jarrett Drake, Eric Meschino, and Bill Souza, on behalf of themselves and those similarly situated (collectively "Plaintiffs") oppose the Motion.[3] Having considered the parties' briefing, the record, and the applicable law, the Court will GRANT the Motion.

### I. BACKGROUND

This case arises from Defendant's alleged Disparagement of Aquacultural Product pursuant to LA. R.S. §3:4503[4] and Defendant's alleged Tortious Intentional Interference with Plaintiffs' Proprietary Rights.[5] Plaintiffs are a collection of Massachusetts based lobstermen.[6]

---

[1] R. Doc. 7.
[2] *Id*.
[3] R. Doc. 11.
[4] R. Doc. 1 at ¶¶ 63-73.
[5] *Id*. at ¶¶ 82-87.
[6] R. Doc. 1 at ¶ 1.

1

"Each Plaintiff's sole source of income comes from the trapping of lobsters in the northern Atlantic Ocean, which they sell to various distributors and grocery stores, including Whole Foods, as well as popular grocery and meal delivery services Hello Fresh and Blue Apron."[7] Defendant MBA is a 501(c)(3) nonprofit corporation focused on, *inter alia*, the promotion of sustainable seafood practices to both businesses and consumers.[8]

MBA operates an online publication called "Seafood Watch."[9] Through Seafood Watch, MBA offers businesses a "recommendation list" which "ranks and scores hundreds of varieties of seafood, the body of water the seafood is caught in, and the method of catch."[10] On September 5, 2022, Seafood Watch issued a press release, warning that tools used in lobstering presented "significant risks … to the endangered North Atlantic right whale" (the "Press Release").[11] Plaintiffs claim that "[i]n direct response to [MBA]'s press statement . . . Whole Foods, Hello Fresh, and Blue Apron all pulled Gulf of Maine lobsters from their product lines"[12] and that the Press Release caused a "discontinuation of sales" that "has caused and continues to cause substantial monetary harm to Plaintiffs, as well as other similarly situated Massachusetts lobstermen."[13]

Plaintiffs filed suit in the United States District Court for the Eastern District of Louisiana.[14] Defendant now asserts that this venue is improper and requests the case be transferred to the Northern District of California pursuant to 28 U.S.C. § 1406.[15] In the alternative, Defendant

---

[7] *Id*.
[8] *Id*. at ¶ 23.
[9] *Id*. at ¶ 12.
[10] *Id*. at ¶23.
[11] *Id*. at ¶ 34.
[12] *Id*. at ¶ 6.
[13] *Id*. at ¶ 7.
[14] R. Doc. 1.
[15] R. Doc. 7-1 at 6.

asserts that this Court lacks personal jurisdiction over MBA and requests this case be transferred to the Northern District of California pursuant to 28 U.S.C. § 1631.[16] On the other hand, Plaintiffs argue that both venue and personal jurisdiction are proper and that this case should remain in the Eastern District of Louisiana.[17]

## II. LAW AND ANALYSIS

The Court "for the convenience of parties and witnesses, in the interest of justice, may transfer any civil action to any other district or division where it might have been brought."[18] 28 U.S.C. § 1406 provides that a district court that is not a proper division or district for venue purposes shall dismiss the case, or if the interests of justice so dictate, transfer the case to any district or division in which it could have been brought originally.[19]

The decision to transfer a case lies within the discretion of the district court.[20] Importantly, "the plaintiff's privilege to choose, or not to be ousted from, [its] chosen forum is highly esteemed. The burden of proof in a motion to transfer is on the moving party. Unless the balance of factors strongly favors the moving party, the plaintiff's choice of forum generally should not be disturbed.'"[21]

As to venue, as is relevant here, a civil action may be brought in (1) "a judicial district in which any defendant resides" or (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"[22] In the instant case, Plaintiffs assert venue is proper

---

[16] *Id*.
[17] R. Doc. 11.
[18] 28 U.S.C. § 1404(a).
[19] 28 U.S.C. § 1406(a).
[20] *See SeaTrepid Int'l, LLC v. ML Salvage Venture, LLC*, 2013 WL 4012655 at *3 (E.D. La. Aug. 5, 2013)
[21] *Redhawk Holdings Corp., et al v. Schreiber, et al*, 2017 WL 6211037 at *2 (E.D. La. Aug. 16, 2017) (quoting *Carpenter v. Parker Drilling Offshore USA, Inc.*, 2005 WL 1432373 at *1 (E.D. La. June 16, 2005) (internal quotations removed).
[22] 28 U.S.C. § 1391(b).

3

in the Eastern District of Louisiana because, they claim, MBA is a resident of Louisiana,[23] and a substantial part of the events giving rise to Plaintiffs' claim occurred in the Eastern District of Louisiana.[24]

### A. Does MBA Reside in Louisiana?

Plaintiffs argue pursuant to 28 U.S.C. § 1391(b)(1) that the Eastern District of Louisiana is a proper venue for this dispute because MBA "resides" in that district. It is undisputed that Defendant is a 501(c)(3) nonprofit public benefit corporation incorporated in the State of California with headquarters in Monterey, California.[25] However, 28 U.S.C. § 1391(c)(2) provides that "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." Accordingly, in order to determine whether MBA resides in the Eastern District of Louisiana, and thus whether venue is proper in this district, the Court must determine whether MBA is subject to the Court's personal jurisdiction with respect to this action. That is, the Court must determine whether it has specific jurisdiction over MBA.[26]

Plaintiffs offer two arguments in support of their argument that this Court may assert personal jurisdiction over MBA. The Court will examine each in turn.

#### 1. Forum Contacts

A plaintiff bears the burden of proving that a court can properly exercise personal

---

[23] R. Doc. 11 at 16.
[24] R. Doc. 1 at 7.
[25] R. Doc. 1 at ¶ 12.
[26] Plaintiffs do not argue that this Court has general personal jurisdiction over MBA. *See* R. Doc. 1 at ¶ 15.

jurisdiction over the defendant.[27] To satisfy that burden, the plaintiff must show that the defendant has the requisite "minimum contacts" with the forum state necessary to exercise personal jurisdiction without "offend[ing] traditional notions of fair play and substantial justice."[28] Specific jurisdiction requires that "the defendant must have 'purposefully directed' his activities at the residents of the forum, and the litigation must result from alleged injuries that 'arise out of or relate to' the defendant's activities directed at the forum."[29] "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts."[30]

Plaintiffs argue MBA "purposely directed" its activities at the Eastern District of Louisiana because the Seafood Watch website is "accessible and read in Louisiana[,]" and assert their alleged injuries arose as a result of MBA posting the Press Release on that website. But the United States Court of Appeals for the Fifth Circuit has expressly held that "[m]aking a website that's visible in [the forum state] . . . does not suffice" to establish personal jurisdiction.[31] And as the United States Supreme Court has explained when considering whether an alleged libelous statement on a website can form the basis for personal jurisdiction over a defendant, "[w]hat matters is whether [the defendant] aimed the alleged libel at [the forum state]."[32] Here, Plaintiffs concede that the Press Release was "directed at consumers and businesses in all fifty states."[33] MBA's statements thus

---

[27] *Wilson v. Belin*, 20 F.3d 644, 649 (5th Cir. 1994).
[28] *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).
[29] *Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir. 1992) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).
[30] *Rudzewicz*, 471 U.S. at 475.
[31] *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 320 (5th Cir. 2021), *cert. denied*, 214 L. Ed. 2d 277 (2022); *see also Herman v. Cataphora*, 730 F.3d 460, 465 (5th Cir. 2013) (holding that merely making an article accessible online in the forum is insufficient to give rise to specific jurisdiction based on that article).
[32] *Johnson*, 21 F.4th at 321 (citing *Calder v. Jones*, 465 U.S. 783, 789 (1984)).
[33] R. Doc. 1 at ¶ 23.

were "not aimed at [Louisianians] any more than at residents of other states," and therefore cannot form the basis for this Court to assert specific personal jurisdiction over MBA in this dispute.[34]

Additionally, Plaintiffs allege that MBA "purposefully availed itself of conducting activities in the State of Louisiana by creating ties with businesses that transact in the State."[35] But isolated commercial relationships with entities in a forum are not sufficient to establish general jurisdiction, let alone personal jurisdiction.[36] Plaintiffs allege more: that MBA "exerted control"[37] over businesses that transact in Louisiana or "manipulated those businesses' purchasing decisions, directly causing financial harm to Plaintiffs[.]"[38] This leads the Court into its discussion of Plaintiffs' second argument: that MBA asserts control over businesses in Louisiana such that the contacts of those "partner companies"[39] with the forum can be attributed to MBA, thus providing the Court for a basis under which to assert personal jurisdiction over MBA.

2. Agency Theory

As Plaintiffs point out, "[a]ctions by an agent can be used to establish jurisdiction over the principal."[40] Thus, "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there[.]"[41] Plaintiffs argue that MBA asserts control over its "partner companies" in Louisiana such that it is effectively the "principal," and the partner companies its "agents."[42] They argue:

---

[34] *Johnson*, 21 F.4th at 318 (citing *Revell v. Lidoy*, 317 F.3d 467, 475 (5th Cir. 2002).
[35] R. Doc. 11 at 16.
[36] See *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 340 (5th Cir. 1999).
[37] *See id.* at 338–39.
[38] R. Doc. 11 at 16.
[39] Here, Whole Foods, BlueApron, and HelloFresh.
[40] *Williamson v. Petrosakh Joint Stock Co. of the Closed Type*, 952 F.Supp. 495, 498 (S.D. Tex. 1997) (citing *O'Quinn v. World Indus. Constructors, Inc.*, 874 F.Supp.143, 145 (E.D. Tex. 1995), *aff'd*, 68 F.3d 471 (5th Cir. 1995)).
[41] *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014).
[42] R. Doc. 11 at 8–9.

> Through its Seafood Watch program, [MBA] has successfully created a network of powerful market players in the food sale industry, and its finger rests on the proverbial 'big red button.' With each corporate pledge that a new partner business takes, MBA gains an unwaveringly loyal follower, one prepared to follow directions given by MBA regarding the sale or boycott of products according to MBA's wishes. This ability to control its partners' businesses through its so-called "recommendations"—which appear to be binding on partner businesses— makes the relationship between MBA and these other businesses not a partnership, as the Seafood Watch program claims, but rather an agency relationship, whereby the business agrees to subject itself to the control of MBA.[43]

In support of this argument, Plaintiffs cite to the Fifth Circuit's decision in *In re Chinese Manufactured Drywall Products Liability Litigation*.[44] In that case, the Fifth Circuit held that the forum contacts of one Chinese company could be imputed to another Chinese company for the purposes of personal jurisdiction because the relationship between the two companies was essentially that of an agent to a principal.[45] However, the *Chinese Drywall* court explained that, to prove that such a relationship exists, the plaintiff must establish a level of control by the defendant such that the purported agent "manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation."[46]

Plaintiffs have not established that MBA asserts anywhere near that level of control over WholeFoods, BlueApron, or HelloFresh. Plaintiffs argue that MBA "controls" the purchasing decisions of those companies via its recommendations on Seafood Watch, and that this "control was conclusively demonstrated when MBA red-listed the Gulf of Maine Lobster and its associated fisheries, and its partners, HelloFresh, Blue Apron, and Whole Foods, immediately complied with

---

[43] *Id.* at 6–7.
[44] 753 F.3d 521, 531 (5th Cir. 2014).
[45] *Id.* at 534–35.
[46] *Id.* at 530 (quoting *Enic, PLC v. F.F. S. & Co., Inc.*, 870 So.2d 888, 891 (Fla. Dist. Ct. App. 2004)).

7

MBA's directive to cease purchase and sale of Gulf of Maine Lobster."[47] But MBA's recommendations on the Seafood Watch website are just that—recommendations. The fact that those companies followed MBA's recommendation in the Press Release to Plaintiffs' alleged detriment does not show that MBA "controls" those companies in any way.[48] Accordingly, this Court cannot assert personal jurisdiction over MBA via imputation to it of those companies' contacts with this forum.

### B. Did a Substantial Part of the Events Giving Rise to Plaintiffs' Claim Occur in the Eastern District of Louisiana?

Plaintiffs also argue pursuant to 28 U.S.C. § 1391(b)(2) that "[v]enue is proper in this forum . . . because the harm caused by [Defendant's] false and defamatory statements occurred in Louisiana."

In *Jenkins v. Georgia-Pacific Co.*, the court considered a similar argument.[49] There, the plaintiff, a resident of the Eastern District of Louisiana, was involved in a vehicular accident in the Western District of Louisiana. Plaintiff filed a claim in the Eastern District, arguing that because his damages were "ongoing and newly arising" venue was proper in the district where he resided rather than the district where the vehicular accident occurred.[50] The court rejected this argument, holding that "it flies in [the] face of the pertinent, plain language of [the statute]" which outlines that "venue is proper in a judicial district in which *a substantial part of the events or omissions giving rise to the claim* occurred," and that "[t]he event or omission giving rise to Plaintiff's claim

---

[47] R. Doc. 11 at 8.
[48] Nor does the fact that Whole Foods displays signs stating that if a product is 'marked red' by MBA's Seafood Watch, "[w]e don't sell it!" *See* R. Doc. 18 at 3. All this demonstrates is that Whole Foods, of its own accord, has made the decision not to sell products 'marked red' by Seafood Watch.
[49] 2002 WL 638561 (E.D. La. Apr. 17, 2002).
[50] *Id.* at *1.

8

is the vehicular accident that occurred in Baton Rouge, not the medical treatment he allegedly received as a result of the accident."[51] The Court in *Jenkins* made it clear that the appropriate test for venue considers where the conduct occurred, *not* where any alleged harm or impact was felt.

Here, the "event or omission" giving rise to Plaintiff's claim was MBA's act of publishing the Press Release.[52] The Court presumes that this event occurred in Defendant's headquarters in the State of California as Plaintiffs have not alleged any evidence to the contrary. Because Plaintiffs make no allegation that the Press Release was conceived of, written in, or published from the State of Louisiana, the Court cannot find that venue is proper in the Eastern District of Louisiana.

Additionally, even if the Court could consider venue to be appropriate where the alleged harm or impact was felt, rather than where the conduct occurred, venue would still not be proper in the Eastern District of Louisiana. The alleged harm in this case is the "substantial monetary harm" suffered by Plaintiffs.[53] This alleged monetary harm would have primarily been felt in the State of Massachusetts, where Plaintiffs live and work, not in the State of Louisiana.[54]  Thus, the Eastern District of Louisiana is not the proper venue for this dispute.

Having determined that the Eastern District of Louisiana is not the proper venue for this dispute under any theory, the Court finds that the interest of justice requires this matter to be transferred to the Northern District of California, a district in which the parties do not contest that it could have been brought originally.[55] Having so concluded, the Court need not address the

---

[51] *Id*. (quoting *Smith v. Fortenberry*, 903 F. Supp. 1018, 1020 (E.D. La. 1995)) (emphasis original and internal quotation marks removed).
[52] R. Doc. 1 at ¶ 5.
[53] *Id*. at ¶ 7.
[54] *Id*. at ¶¶ 8-11.
[55] *See* 28 U.S.C. § 1406(a).

remainder of MBA's arguments.

### III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant Monterey Bay Aquarium Foundation's Motion to Transfer[56] is **GRANTED** and this matter is hereby **TRANSFERRED** to the United States District Court for the Northern District of California.

New Orleans, Louisiana, this 28th day of September, 2023.

GREG GERARD GUIDRY<br>
UNITED STATES DISTRICT JUDGE

---

[56] R. Doc. 7.